Albert Norman WEST

v.

UNITED STATES of America.

No. 15285.

United States Court of Appeals Fifth Circuit.

April 20, 1955.

Albert Norman West, in Pro. Per.

James W. Dorsey, U. S. Atty., Harvey H. Tisinger, John W. Stokes, Asst. U. S. Attys., Atlanta, Ga., for appellee.

Before HUTCHESON, Chief Judge, HOLMES, Circuit Judge, and DAW-KINS, District Judge.

HUTCHESON, Chief Judge.

This is an appeal from an order [1] entered after a full hearing, denying a petition for relief under Section 2255, Title

---

1. "Order Overruling Motion to Vacate Sentence.

"This motion to vacate sentence filed June 11, 1954 containing ten pages, much of which is argument, is based essentially upon the following contentions:

"(1) That defendant was illegally arrested without a valid warrant and was subjected to illegal search and seizure. These grounds are without merit for the sentence is based upon a plea of guilty which if valid, renders the foregoing matters immaterial.

"(2) That defendant was not competently represented by counsel and that he was sentenced in spite of his attempts to convince the court and his appointed counsel of his innocence.

"In response to rule nisi issued on this motion the Government has produced transcript of a number of hearings, at time of the arraignment, the entering of plea and the sentence, and the lack of merit in this motion cannot be fully appreciated without a full reading of the transcript. However, a few references thereto will perhaps be helpful.

"This court imposed upon movant two sentences of five years each to run consecutively, a total of ten years. He had already received eight years by Judge Kennamer in Alabama, so this sentence only added two years to his total service, and by running concurrently it would enable prisoner to be eligible for parole.

"Throughout all of these hearings it is

28 U.S.C. Summarizing the files and records of the case, and stating, "The court is of the opinion that the motion is palpably without merit", the order concluded: " * * * the Court is overruling applicant's motion for habeas corpus ad testificandum seeking his own production in court. The writ must be denied upon the uncontroverted allegations of the response, and it is so ordered. The motion is dismissed."

Appellant is here insisting that upon the transcript of record on file in this cause, the district judge erred in accepting the contravention of the government as settling against petitioner the issues tendered in his motion for relief. These issues as argued in his brief are (1) that petitioner was not competently represented, in fact the record of the trial proceedings show that petitioner was denied effective assistance of counsel; and (2) that, inadequately represented as he was, petitioner could not, and did not, completely, understandingly and willingly plead guilty to the charges on which he was convicted so as to support the sentence imposed, and that the judgment and sentence may not stand.

Stating in his reply brief, "No complaint is made at this time as to the merits of the district court's decision to deny the appellant the right to appear in person to prosecute his petition, it is noted that the United States attorney has exhausted his argument on this issue", appellant insists that the record affirmatively shows: that the judgment was rendered without jurisdiction, in that plaintiff did not have what in law and in fact is understood and meant by "the assistance of counsel", and did not competently plead guilty; and that there has thus been "such a denial or infringement of the constitutional rights of the prisoner as to render the judgment appealed from vulnerable to collateral attack."

apparent that the prisoner was seeking, as a condition to entering a plea of guilty, to receive no additional time, but a sentence of only eight years to run concurrent with the Alabama sentence.

"As to his failure to have effective assistance of counsel, the record shows: On October 17, 1949, there appeared before Judge Robert L. Russell, then Judge of this Court, L. H. Wallen of Montgomery, Alabama, who stated that 'under the statement that is made to me I have advised him that he would be guilty, and on my advice he has decided to plead guilty.'

"Sentence was postponed and on October 18, 1949, the matter came again before Judge Russell, and Mr. Wallen stated to the court 'under the statement that he told me I can't see where any jury could turn him loose.' Movant then stated that he was not guilty, that he had no intention to defraud, etc. The court stated it was a matter of guilt or innocence. The prisoner said, 'I just wanted to have an established fact whether the additional sentence, whether it would run concurrent and otherwise.'

"On January [October] 26, 1950, the matter came before the writer who had appointed Mr. Walter A. Smith, competent attorney of the Atlanta bar to represent defendant. It appeared that Mr. Smith had made several trips to the Federal Penitentiary and conferred with defendant, stating 'It was my sincere and firm belief that it was advisable for him to stand by his original plea.' The court was advised the prisoner wished to contact Mr. Claud Moore, an Atlanta attorney; he was given an opportunity to do so, and on November 16, 1949, defendant appeared before this court with Mr. Moore and Mr. Smith as his attorneys. Mr. Moore stated that the prisoner had always persistently rejected the advice of all his counsel. Mr. West (see page 7 of the record) sought to involve his wife and her father, a school teacher, in this offense (see also pages 21–23 of the record.) These statements, however, involve the defendant himself. The court expressly pointing out to defendant and others (see record pp. 24 and 25) that the prisoner had not made a motion to set aside his plea, and even then no such motion was made.

"Many other pertinent facts will appear from reading the transcript. This court is of the opinion the motion is palpably without merit.

"The foregoing transcript not being traversed or denied no further hearing is required and the Court is overruling applicant's motion for habeas corpus ad testificandum filed July 13, 1954, seeking his own production in court. The writ must be denied upon the uncontraverted allegations of the response, and it is so ordered.

"The motion is dismissed."

Based upon this premise, he urges that the order appealed from should be reversed with directions to the court to "vacate and set the judgment aside and either discharge him or resentence him, or grant him a new trial or correct the sentence as may appear appropriate."

We agree with petitioner that this is so. Read the record as one may, we think there is no escape from the conclusion that while defendant's private counsel did undertake on Oct. 6, 1949, and again on Oct. 14, 1949, to plead him guilty before Judge Russell, who was then district judge, the defendant then and there stated to Judge Russell that he did not feel that he was guilty, whereupon Judge Russell told the defendant that he would not proceed to sentence if he wanted to withdraw his plea, and his then counsel asking to be, and being, excused from representing him further, Judge Russell, deferring the matter for further consideration, appointed a lawyer to represent defendant until he could employ one of his own choosing.

Judge Russell having thereafter been appointed as a member of this Court, the matter came on for further hearing before Judge Hooper, and during this hearing the defendant adamantly insisted that he would not plead guilty unless he could have some understanding, in accordance with the tentative understanding that he claimed and proved that he had had when he pleaded guilty to substantially the same matter in the Northern District of Alabama, and had been given a term of eight years, that any sentence imposed upon him in Atlanta would not require him to serve any time beyond the eight years already imposed upon him. Bent upon seeing to it that his parole time was not affected by a new and heavier sentence, he persisted in stating that he did not wish to, and would not, plead guilty, and at one time Judge Hooper said, "I consider that he has withdrawn his plea". There followed more talk, more and different lawyers, all bent, no doubt with the best of motives, upon inducing appellant to plead guilty and all of them stating to the court that the defendant would not pay any heed to their advice or counsel.

The proceedings before Judge Hooper were had at several sittings. The first was on October 28th, the last and longest when the sentence was imposed on November 4th they consumed much time, and except for the latter portion of the second session when, though the question of whether he had pleaded or would plead was still being debated, the judge required the defendant to be sworn and questioned him under oath, the matter proceeded with great, indeed due deliberation, and in an atmosphere of patient and apparently understanding helpfulness in trying to arrive at whether the defendant really wished to plead guilty and if he did what sentence would properly be imposed.

On October 28th, after counsel for defendant had stated to the district judge that it had been substantially understood when the eight year sentence was imposed in Alabama that if an additional sentence was imposed in Atlanta, it would not exceed the time already imposed and would run concurrently, this occurred:

The Court: "I would be willing to, and I think it would be proper to give him a sentence to run concurrent with the other, which is about eight years."

Mr. Smith: "Yes, sir."

The Court: "If you wish to take that into consideration on his plea, you may do so, but as I consider it now, his plea has been withdrawn."

At no time thereafter did the judge withdraw either the statement that he considered that the plea had been withdrawn or the statement that he "would be willing to, and I think it would be proper to, give the defendant a sentence to run concurrent with the other."

At the sitting on November 4th, while the matter began in the same understanding atmosphere, the court, after stating that he would not continue the matter for further time for defendant to try to obtain counsel of his own, went on to say, "I will be glad to hear from Mr.

West anything he wishes to say on his own behalf". Thereafter, after considerable testimony, in the course of which the defendant apparently laid the blame on his father-in-law and his wife, the court interjected, "You mean you are charging that Mr. Powell and his daughter, who is your wife, are the ones responsible in this matter, and not you?" And thereafter the hearing continued with the defendant talking for himself, and Mr. Smith, the appointed counsel, also speaking, the defendant insisting throughout that he had not been able to make proper arrangements for private counsel and that he ought to be allowed to do so before final action was taken in his case. Then the question coming up about the statement that had been made to him in the Alabama hearings with regard to what might be expected to be done in Atlanta, this followed:

The Court: "You say the federal judge said that?"

Mr. West: "To Mr. Walden."

The Court: "He said that to Mr. Walden?"

Mr. West: "And Mr. Walden repeated to the Honorable Russell over here three weeks ago today, * * * ".

The Court: "Mr. Clerk, I want to put this man under oath."

Thereafter a long colloquy occurred between the court and defendant,[2] and in this atmosphere of dispute and contention with appellant standing firmly to his position that he did not wish to, and would not, plead guilty except on some understanding that he would not be sentenced to more time than had been imposed upon him, the judge proceeded to sentence him and give him additional time.

Under these circumstances it cannot be held that defendant voluntarily, understandingly, and with the assistance of counsel, entered an unqualified plea of guilty. The order denying his petition is Reversed and the cause is Remanded with directions to vacate the judgment and take further proceedings accordingly.

2. Of which the following is a part: By the Court—
Q. "Now, take the witness stand, Mr. West. Mr. West, before I ask you any questions here in regard to the facts that you want to present to this court regarding the imposition of a sentence on you in this case, I wish to first acquaint you with your rights. You have two counsel here representing you, one appointed by the court, and one contemplated employment by you. I wish to explain to you that if you make any statement to this court which is false at this time, that you will be subject to a prosecution for perjury. Do you understand that?"
A. "Yes, sir."
Q. "You are familiar with that?"
A. "I understand what you say. I don't know the legal technicalities of it. If I understand,—you mean by that that I might have extra punishment if I attempt to tell a lie."
Q. "I mean to say if you swear something now that isn't true, you will be violating the Federal law of perjury which is punishable by confinement in the penitentiary, and I mean that that could be in addition to whatever sentence you get on this other matter for which you have plead guilty. Now, is that thoroughly—do you understand that thoroughly?"
A. "That I am subject to punishment if I tell a lie?"
Q. "Yes, sir."
A. "Yes, sir."
Q. "Now, with that fact clear in your mind, I want you to tell me what was said in the presence of Judge Kennamer in regard to what would be done about this Atlanta case at the time you plead guilty in Alabama offense similar to this one. I want you to be very careful that you tell me correctly what did happen."
A. "It was not said by Judge Kennamer in my presence. I said Attorney Walden told me. * * * "
* * * * *
Q. "In other words, any statements that you make to the effect that at the time you plead guilty in Alabama you were told that you would not be prosecuted in Atlanta were based entirely upon what Mr. Walden told you?"
A. "I did not plead guilty in Alabama, Your Honor. I was tried there."